UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------X

MELINDA DEMARATTES,

                *Plaintiff*,

    -against-

ENHANCED RECOVERY COMPANY, LLC,

                *Defendant*.

--------------------------------------X

**<u>MEMORANDUM AND ORDER</u>**

20-CV-4722(KAM)(LB)

**KIYO A. MATSUMOTO, United States District Judge:**

        Plaintiff Melinda Desmarattes ("Plaintiff"), proceeding *pro se*, commenced the instant action against Defendant Enhanced Recovery Company, LLC ("Defendant" or "ERC"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227 *et seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* (*See* ECF No. 1 ("Compl.") at 3–4.) Currently before the Court is Defendant's motion to dismiss Plaintiff's Second Amended Complaint ("SAC") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* ECF No. 22, Defendant's Notice of Motion to Dismiss.)  For the reasons stated below, Defendant's motion is **granted.**

## BACKGROUND

For the purpose of deciding Defendant's Rule 12(b)(6) motion, the Court accepts as true the factual allegations in the SAC and exhibits attached thereto,[1] (*see* ECF No. 19, SAC), and draws all inferences in Plaintiff's favor. *See Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015). Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted). "When a plaintiff proceeds *pro se*, however, the Court may consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint, *Scott-Monck v. Matrix Absence Mgmt., Inc.*, No. 19-cv-11798(NSR), 2022 WL 2908007, at *4 (S.D.N.Y. July 22, 2022) (quoting *Gayot v. Perez*, No. 16-cv-8871(KMK), 2018 WL 6725331, at *4 (S.D.N.Y. Dec. 21, 2018)), including "factual allegations made by a *pro se* party in his papers opposing the motion [to dismiss]." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

---

[1] "In reviewing a motion to dismiss, we 'may consider [not only] the facts alleged in the complaint, [but also] documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.'" *Sabir v. Williams*, 37 F.4th 810, 814 (2d Cir. 2022) (alternations in original) (citation omitted).

### I.    Factual Background

Plaintiff alleges that she is a "consumer" as defined by the FCRA, (*see* SAC at 3 (citing 15 U.S.C. § 168a(c)), and that Defendant ERC "acts as a debt collector, as defined by § 1692a of the FDCPA because it regularly uses the mails and/or the telephone to collect, or attempt to collect, defaulted consumer debts that it did not originate." (*Id.*) Plaintiff also alleges that in January 2020, ERC purchased the collection rights to the outstanding debt associated with the AT&T Mobility, LLC account at issue, which has been closed since March 2015. (*Id.*)

In addition, Plaintiff alleges that ERC "falsely reported incorrect debt information to national credit reporting agencies including but not limited to, incorrect debt amount, account status and status update." (*Id.*) Plaintiff notes that the "debt amount of $2,465 . . . . is incorrect," but does not provide any facts explaining her view of the correct amount. (*Id.*) The Experian Credit Report, filed as Exhibit A to the SAC, indicates that as of August 23, 2020, the collection account, which was opened on January 14, 2020, had a past-due balance of $2,390. (*See* ECF No. 19-2, Exhibit A to the SAC, at 1.) The Report also notes the payment status of the account as "[s]eriously past due/assigned to attorney, collection agency, or credit grantor[']s internal collection department." (*Id.*)

Plaintiff alleges that ERC violated the FDCPA by: (1) falsely representing "the true amount of the debt," in violation of 15 U.S.C. § 1692e(2)(A); (2) engaging in "collection activity to harass, oppress, or abuse Plaintiff," in violation of Section 1692d; (3) failing to disclose to Plaintiff that the communication is from a debt collector, in violation of Section 1692e(11); and (4) failing to inform Plaintiff during collection calls made to her cell phone "that making a payment would re[-]age the debt which would make the contract invalid," in violation of Section 1692e(10). (SAC at 4; Pl. Opp. at 2–3.) *See* 15 U.S.C. § 1692e(10) ("[T]he following conduct is a violation of this section:[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.").

Plaintiff also alleges that ERC placed "over 200 calls" to her cell phone "in an effort to collect the alleged debt," and that ERC's "excessive calls affected Plaintiff's ability to use [her] phone, work and caused emotional and physical distress." (SAC at 4.) Plaintiff states that she "suffered documented physical and emotional ailments due to the stress" caused by the "excessive" collection calls from ERC, and submitted, as Exhibit D to the SAC, the June 9, 2020 patient progress notes from Dr. Charlotte Noorollah, M.D., which noted Plaintiff's "gradual and

continuous" hair loss over the course of six years.  (ECF No. 19-2, Exhibit D to the SAC, at 4.)

Finally, Plaintiff alleges that due to ERC's "conduct, actions and/or inactions, [she] suffered damage by loss of credit, loss of ability to purchase and benefit from credit, increased interest rate, los[s] of mortgage loans, the mental and emotional pain, anxiety, anguish, humiliation and embarrassment of credit denials," and that she was "denied two loans."  (SAC at 4.)

Plaintiff makes additional factual allegations in her opposition to ERC's motion to dismiss, stating that ERC sent Plaintiff a dunning letter in or about 2015 attempting to collect $2,465, a debt Plaintiff alleges was "incurred for personal, family, or household purposes."  (Pl. Opp. at 1–2.)  Plaintiff also alleges that ERC further attempted to collect the debt by reporting the debt to credit reporting agencies and "causing consumer reporting agencies to publish the alleged debt in consumer reports concerning Plaintiff."  (*Id.* at 2.)  According to Plaintiff, she is not indebted to non-party AT&T Mobility, LLC, or ERC, and has not promised, consented, or entered into a contract promising to pay them $2,465.  (*Id.*)

## II.  Procedural History

Plaintiff commenced the instant action on September 29, 2020.  (*See* Compl.)  Plaintiff moved to proceed *in forma pauperis*, and the Court granted Plaintiff's motion on November 17, 2020.

(*See* ECF No. 6, Order dated November 17, 2020.)  On April 27, 2021, Defendant filed a motion for a pre-motion conference in anticipation of its motion to dismiss, (*see* ECF No. 9, Defendant's Motion for a Pre-Motion Conference), and the Court ordered Plaintiff to file a response.  (*See* Orders dated April 27, 2021, May 3, 2021, and May 18, 2021.)

On May 21, 2021, Plaintiff, rather than complying with the Court's Orders to file her response to Defendant's motion for a pre-motion conference, filed an amended complaint.  (*See* ECF No. 11, Amended Complaint.)  On May 26, 2021, the Court issued an Order advising the parties that the Court would "decide whether [P]laintiff can amend the complaint at the pre-motion conference scheduled for" June 2, 2022.  (*See* Order dated May 26, 2021.)  In that same Order, the Court directed Plaintiff to file her response to Defendant's motion for a pre-motion conference.  (*Id.*)  Plaintiff filed her response on May 28, 2021.  (*See* ECF No. 13, Plaintiff's Response to Defendant's Motion for a Pre-Motion Conference.)

During the pre-motion conference, held on June 2, 2021, the Court advised the parties to engage in settlement discussions, and referred the parties to a settlement conference before Magistrate Judge Lois Bloom.  (*See* Minute Entry dated June 2, 2021.)  At the conference, the Court also directed Plaintiff to file a second amended complaint and Defendant to answer or file a

motion for a pre-motion conference, should the settlement discussions prove unsuccessful. (*Id.*) A settlement conference was held before Judge Bloom on June 16, 2021, but the parties were unable to reach a resolution. (*See* Order dated June 16, 2022.) Plaintiff filed a second amended complaint on July 21, 2021, (*see* ECF No. 19), and Defendant has moved to dismiss the SAC, and Defendant's motion to dismiss was fully briefed on December 10, 2021. (*See* ECF Nos. 22, Defendant's Notice of Motion; 23, Defendant's Memorandum of Law in Support of its Motion to Dismiss; 24, Plaintiff's Opposition to Defendant's Motion to Dismiss; 25, Defendant's Reply Memorandum of Law in Further Support of its Motion to Dismiss.)

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "detailed factual allegations" are not required, "[a] pleading that offers labels or conclusions or a formulaic recitation of the

elements of a cause of action will not do." *Id.* (internal quotation marks and citation omitted).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). However, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Caidor v. Onondaga Cnty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them.") (italics and citations omitted).

## DISCUSSION

### I.   Standing

"Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) (citation omitted). "The irreducible constitutional minimum of standing derives from Article III, Section 2 of the U.S. Constitution, which limits federal judicial power to cases and controversies." *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 79 (2d Cir. 2013) (internal quotation marks

and citations omitted).  To establish Article III standing, a plaintiff must show "(i) that [s]he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  At the pleading stage, a plaintiff "bears the burden of alleging facts that affirmatively and plausibly suggest that [she] has standing to sue."  *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022) (citation omitted).

As the Supreme Court explained in *TransUnion*, simply alleging a statutory violation does not demonstrate a concrete injury.  141 S. Ct. at 2205; *see also Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022) ("[*TransUnion*] makes clear that a statutory violation alone, however labeled by Congress, is not sufficient for Article III standing."); *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 (2d Cir. 2021) ("*TransUnion* established that in suits for damages plaintiffs cannot establish Article III standing by relying entirely on a statutory violation or risk of future harm.").  Instead, Plaintiff must plausibly allege that the statutory violation resulted in a concrete injury, *i.e.*, a "physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in

9

American courts." *Harty*, 28 F.4th at 442-43 (quoting *TransUnion*, 141 S. Ct. at 2206).

The Court finds that Plaintiff has plausibly stated concrete injuries, specifically, "deni[al] of two loans," stemming from the alleged false information contained in her credit reports. (SAC at 4—5; ECF No. 19-2, Exhibit D to the SAC, at 4.) Some of the harms allegedly suffered by Plaintiff, such as "loss of credit, loss of ability to purchase and benefit from credit, increased interest rate, los[s] of mortgage loans, the mental and emotional pain, anxiety, anguish, humiliation[,] and embarrassment of credit denials," (SAC at 4), are vague, conclusory, and akin to the injuries found insufficient by other courts in this Circuit. *See, e.g.*, *Gross v. TransUnion, LLC*, No. 21-cv-1329(BMC), 2022 WL 2116669, at *3 (E.D.N.Y. June 13, 2022) (conclusory allegations of "injury to [plaintiff's] credit worthiness," "increased difficulty obtaining credit," and "embarrassment, humiliation and other emotional injuries" insufficient for Article III standing); *Zlotnick v. Equifax Info. Servs., LLC*, No. 21-cv-7089(GRB), 2022 WL 351996, at *2 (E.D.N.Y. Feb. 3, 2022) (conclusory allegations of "mental and emotional pain, anguish, humiliation, and embarrassment of credit denial" insufficient for Article III standing).

However, Plaintiff's allegation that she was denied two loans due to the inaccurate credit reporting resulting from the false debt information furnished by ERC constitutes a "specific allegation[ ] of . . . monetary harm" that confers Plaintiff constitutional standing. *Spira v. TransUnion LLC*, No. 21-cv-2367(KMK), 2022 WL 2819469, at *4 (S.D.N.Y. July 19, 2022). *See Gross,* 2022 WL 2116669, at *3 (holding, in FCRA context, that where the plaintiff's "alleged harms [were] not expenses, costs, any specific lost credit opportunity, or specific emotional injuries," the allegations in the complaint failed to show how the defendant's alleged error reporting the wrong entity as the plaintiff's creditor "caused [the] plaintiff to suffer a 'concrete and particularized' harm"). As Plaintiff has pleaded sufficient facts to plausibly suggest that she suffered concrete injuries as required by Article III, the Court has subject matter jurisdiction over her FCRA and FDCPA claims.

As for her claim under the TCPA, Plaintiff alleges that she received "over 200 [collection] calls" to her cell phone from ERC, and that ERC's "excessive calls affected Plaintiff's ability to use [her] phone, work and caused emotional and physical distress." (SAC at 4.) The Second Circuit has held that the "'nuisance and privacy invasion' of receiving unsolicited text messages is a sufficient injury to allege standing under the TCPA." *Gorss Motels, Inc. v. Lands' End, Inc.*, 997 F.3d 470, 476 (2d Cir.

2021) (citing *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 93 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 677 (2019) ("[T]he nuisance and privacy invasion attendant on spam texts are the very harms with which Congress was concerned when enacting the TCPA[, and] history confirms that causes of action to remedy such injuries were traditionally regarded as providing bases for lawsuits in English or American courts."). The Court finds that the "nuisance and privacy invasion" of excessive debt collection calls is likewise a sufficient injury to allege standing under the TCPA.[2]

## II. FCRA Claims

The FCRA, 15 U.S.C. §§ 1681 *et seq.*, "regulates credit reporting procedures to ensure the confidentiality, accuracy, relevancy, and proper utilization of consumers' information" and "imposes several duties on those who furnish information to consumer reporting agencies." *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 150 (2d Cir. 2012) (per curium) (citing 15 U.S.C. §§ 1681(b), 1681s-2). Though "the primary function of the FCRA is to regulate the actions of consumer reporting agencies," it also imposes obligations on the "furnishers of information," or

---

[2] Plaintiff also alleges that she suffered hair loss due to the stress caused by the "excessive" collection calls from ERC, and submitted, as Exhibit D to the SAC, the June 9, 2020 patient progress notes from Dr. Charlotte Noorollah, M.D., which noted Plaintiff's "gradual and continuous" hair loss over the course of six years. (ECF No. 19-2, Exhibit D to the SAC, at 4.) The Court finds that Plaintiff has failed to plausibly state that the loss of hair that she had been gradually and continuously experiencing for six years prior to June 9, 2020, was caused, or worsened, by ERC's collection efforts that allegedly began when it sent Plaintiff a dunning letter in 2015. (*See* Pl. Opp. at 1–2.)

"entities that transmit, to credit reporting agencies, information relating to debts owed by consumers." *Perez v. Experian*, No. 20-cv-9119(PAE), 2021 WL 4784280, at *5 (S.D.N.Y. Oct. 14, 2021) (citing *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 426 n.11 (S.D.N.Y. 2010)).

These obligations include a duty to "provide accurate information" to credit reporting agencies, 15 U.S.C. § 1681s-2(a), which requires, *inter alia*, that a furnisher not report information relating to a consumer that it "knows or has reasonable cause to believe" is not accurate, *id.* § 1681s-2(a)(1)(A), and not report information the inaccuracy of which has been notified by the consumer, and "is, in fact, inaccurate," *id.* § 1681s-2(a)(1)(B). There is, however, no private right of action to enforce violations of Section 1681s-2(a). *See Longman*, 702 F.3d at 151. *See also Severini v. Pa. Higher Educ. Assistance Agency*, No. 18-cv-2775(ER), 2020 WL 1467396, at *5 (S.D.N.Y. Mar. 25, 2020) ("However, there is no private right of action against a data furnisher merely for reporting information to a credit reporting agency, even if that information is inaccurate.") (citation omitted). Instead, the FCRA provides that Section 1681s-2(a) shall be enforced exclusively by government agencies and officials. *See* 15 U.S.C. § 1681s-2(d).

In addition, upon receiving notice of a dispute with
regard to the completeness or accuracy of any information provided
to a credit reporting agency, a furnisher must: (1) conduct an
investigation with respect to the disputed information, including
a review of the information provided by the credit reporting
agency; (2) report the results of the investigation to the credit
reporting agency; and (3) take corrective steps if the
investigation finds that the information is inaccurate,
incomplete, or impossible to verify.  *See* 15 U.S.C. § 1681s-
2(b)(1).  For Section 1681s-2(b) to apply, the notice of dispute
must originate from a credit reporting agency.  *See Howard v. Mun.
Credit Union*, No. 05-cv-7488(LAK), 2008 WL 782760, at *8 (S.D.N.Y.
Mar. 25, 2008).  "Where a consumer shows only that the furnisher
received notice of the dispute from the consumer, but not from a
credit reporting agency, no claim is stated." *Markovskaya v. Am.
Home. Mortg. Servicing, Inc.*, 867 F. Supp. 2d 340, 344 (E.D.N.Y.
2012).  Private plaintiffs may bring an action for willful or
negligent noncompliance with Section 1681s-2(b).  *See Neblett v.
Chase Bank*, No. 09-cv-10574(DAB), 2010 WL 3766762, at *5 (S.D.N.Y.
Sept. 27, 2010); *see* 15 U.S.C. § 1681n (willful noncompliance);
*id.* § 1681o (negligent noncompliance).

In the instant case, the SAC fails to allege a statutory
basis for a FCRA claim against ERC.  To the extent Plaintiff seeks
relief for a violation of 15 U.S.C. § 1681s-2(a), she fails to

14

state a claim because there is no private right of action under that subsection of the FCRA. *See Longman*, 702 F.3d at 151. If Plaintiff's claim is premised on a violation of Section 1681s-2(b), she has failed to state a claim because the SAC lacks allegations that (1) she notified a credit reporting agency of the disputed accuracy of information provided by ERC, and (2) the credit reporting agency notified ERC of the dispute. *See Mendy v. JP Morgan Chase & Co.*, No. 12-cv-8252(PGG), 2014 WL 1224549, at *5 (S.D.N.Y. March 23, 2014) ("However, the duty to investigate in Subsection (b) is triggered only after a furnisher of information receives notice from a credit reporting agency of a consumer's dispute") (internal quotation marks and citation omitted). In her FCRA claim against ERC, Plaintiff, referencing the statute, alleges in a conclusory fashion that ERC "falsely reported incorrect debt information to the national credit reporting agencies including but not limited to, the incorrect debt amount, account status, and status update," (SAC at 3), but there is no factual allegation that she notified the credit reporting agencies of the dispute. Accordingly, Plaintiff's FCRA claims are dismissed for failure to state a claim.

### III. TCPA Claim

The TCPA "proscribes abusive telemarketing practices by, among other things, imposing restrictions on making calls with an 'automatic telephone dialing system.'" *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).  In relevant part, 47 U.S.C. § 227 provides:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . .

47 U.S.C. § 227(b)(1)(A).  "The term 'automatic telephone dialing system' means equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers."[3]  *Id.* § 227(a)(1).

"To state a claim under the TCPA, a plaintiff must allege that: (1) a call was placed to a cell or wireless phone; (2) by the use of any automatic dialing system [and/or leaving an artificial or prerecorded message] and (3) without prior consent of the recipient."  *Ford v. Bluestem Brands, Inc.*, No. 18-cv-

---

[3] The Supreme Court recently clarified that "[t]o qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Duguid*, 141 S. Ct. at 1167.

2695(VB), 2019 WL 1046367, at *3 (S.D.N.Y. Mar. 5, 2019) (citation omitted); *see also Snyder v. Perry*, No. 14-cv-2090(CBA), 2015 WL 1262591, at *8 (E.D.N.Y. Mar. 18, 2015) (quoting *Echevvaria v. Diversified Consultants, Inc.*, No. 13-cv-4980(LAK), 2014 WL 929275, at *4 (S.D.N.Y. Feb. 28, 2014)).  To survive a motion to dismiss, a complaint must do more than simply restate the statutory language.  *See Abdool v. Cap. One Bank USA*, No. 21-cv-4072(KAM), 2021 WL 4147191, at *4 (E.D.N.Y. Sept. 13, 2021) ("The plaintiff must do more than simply reference the statute."); *Snyder*, 2015 WL 1262591, at *8; *Baranski v. NCO Fin. Sys., Inc.*, No. 13-cv-6349(ILG), 2014 WL 1155304, at *6 (E.D.N.Y. Mar. 21, 2014).  "[A] plaintiff must do more than simply allege that an automatic telephone dialing system was used."  *Schleifer v. Lexus of Manhattan*, No. 17-cv-8789(AJN), 2019 WL 4640055, at *6 (S.D.N.Y. Sept. 24, 2019).  Though "specific technical details" regarding the use of an automatic telephone dialing system ("ATDS") are not required, a complaint "must at least describe, in layman's terms, the facts about the calls or the circumstances surrounding the calls that make it plausible that they were made using an ATDS."  *Baranski*, 2014 WL 1155304, at *6 (citation omitted).  *See Herrera v. Navient Corps.*, No. 19-cv-6583(AMD), 2020 WL 3960507, at *6 (E.D.N.Y. July 13, 2020) ("Those facts may include, for example, the robotic sound of the voice on the other line, the lack of human response when he attempted to have a conversation with the 'person'

calling him, [or] the generic content of the message he received.")
(citation omitted).

Here, the SAC merely alleges, in conclusory fashion, that ERC violated the TCPA, without alleging that it used an ATDS or "an artificial or prerecorded voice," 47 U.S.C. § 227(b)(1)(A). Indeed, the SAC does not contain factual allegations that would allow the inference that an ATDS or an "artificial or prerecorded voice" was used by ERC to make the "over 200 calls" to Plaintiff "in an attempt to collect the alleged debt." (SAC at 4.) Other than that she received "over 200 calls" from ERC and that the calls originated from as many as four different phone numbers, (*see* ECF No. 19-2, Exhibit C to the SAC, at 3), Plaintiff provides no other indicia to support the use of an ATDS or prerecorded voice. In fact, the SAC never alleges—in conclusory fashion or otherwise—that the 200 calls at issue were made using an ATDS or prerecorded voice.

The SAC fails to state a claim under 47 U.S.C. § 227(b)(1) as Plaintiff has not alleged that the calls complained of were placed through the use of an ATDS or prerecorded voice. Accordingly, Plaintiff's TCPA claim under 47 U.S.C. § 227(b)(1) is dismissed for failure to state a claim.

## IV.   FDCPA Claims

The FDCPA, 15 U.S.C. §§ 1692 *et seq.*, was enacted "to eliminate abusive debt collection practices by debt collectors," *Sykes v. Mel S. Harris Assocs. LLC*, 780 F.3d 70, 82 (2d Cir. 2015) (citing 15 U.S.C. § 1692(e)), and to ensure that "those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged," *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 89 (2d Cir. 2008) (internal quotation marks omitted) (citing 15 U.S.C. § 1692(e)).

"A violation under the FDCPA requires that (1) the plaintiff be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, (2) the defendant collecting the debt must be considered a 'debt collector,' and (3) the defendant must have engaged in an act or omission in violation of the FDCPA's requirements." *Derosa v. CAC Fin. Corp.*, 278 F. Supp. 3d 555, 559–60 (E.D.N.Y. 2017), *aff'd*, 740 F. App'x 742 (2d Cir. 2018).  Under the FDCPA, a debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).

"While the FDCPA protects consumers from 'abusive debt collection practices,' 15 U.S.C. § 1692(e), it applies only in instances where a debt collector attempts to collect a 'debt' within the meaning of the Act." *Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff*, 638 F. App'x 100, 102 (2d Cir. 2016) (internal quotation marks omitted) (quoting *Degrosiellier v. Solomon & Solomon, P.C.*, No. 00-cv-1065(NAM), 2001 WL 1217181, at *3 (N.D.N.Y. Sept. 27, 2001)).  Defendant disputes that Plaintiff has sufficiently alleged a "debt" within the meaning of the FDCPA, arguing that the SAC has not alleged that the obligation associated with the AT&T account was incurred "primarily for personal, family, or household purposes," 15 U.S.C. § 1692a(5).  (*See* ECF No. 23, Defendant's Memorandum of Law in Support of its Motion to Dismiss ("Def. Br."), at 6.)  Plaintiff has alleged in her opposition, for the first time, that "[t]he subject alleged debt that Defendant was and is attempting to collect[ ] from Plaintiff was allegedly incurred for personal, family, or household purposes." (Pl. Opp. at 2.)  In light of Plaintiff's *pro se* status, "the Court may consider new facts raised in opposition papers to the extent that they are consistent with the complaint, treating the new factual allegations as amending the original complaint." *See Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018).

Plaintiff's new allegation, however, that merely parrots the statutory definition, without pleading any facts "from which the inference could be reasonably drawn that collection efforts arose from a consumer transaction," *Scarola Malone & Zubatov LLP*, 638 F. App'x at 102, is not sufficient to salvage Plaintiff's FDCPA claims. *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss.") (internal quotation marks, alterations, and citation omitted); *Rosenberg v. McCarthy, Burgess & Wolff, Inc.*, No. 21-cv-2199(MKB), 2022 WL 3030390, at *6 (E.D.N.Y. Aug. 1, 2022) (holding that plaintiff has failed to plausibly allege a "debt" under the FDCPA where "[p]laintiff's only allegations regarding the nature of the debt are that, '[u]pon information and belief, the original subject obligation arose out of a mobile telephone debt' and '[t]he subject debt was incurred by Plaintiff solely for personal, household or family purposes.'").

Because Plaintiff has failed to plausibly allege that the obligation at issue falls within the scope of the FDCPA's protection, the Court need not, and does not, consider whether Defendant "engaged in an act or omission in violation of the FDCPA's requirements." *Derosa*, 278 F. Supp. 3d at 559-60. Accordingly, Plaintiff's claims under the FDCPA are dismissed for failure to state a claim.

<u>**CONCLUSION**</u>

For the forgoing reasons, Defendant's motion to dismiss is **granted**.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is respectfully directed to enter judgment in favor of Defendant and close this case.  Defendant is requested to serve a copy of this Memorandum and Order and the judgment on *pro se* Plaintiff and note service on the docket.

**SO ORDERED**

Dated:      September 9, 2022
            Brooklyn, New York

                                        /s/
                          _____
                          **HON. KIYO A. MATSUMOTO**
                          United States District Judge
                          Eastern District of New York